## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DAVID M. WATSON, II,               :
                                          :
              PLAINTIFF,    :
                                            :   CIVIL ACTION NO. 1:21-CV-0031
      v.                    :
                                          :
TERESA DAVIS, MILTON DRAPER   :
AND JOHN DOES NOS. 1-5,        :
                                          :
           DEFENDANTS.   :

## MEMORANDUM ORDER

**L. FELIPE RESTREPO**, *Circuit Judge*

Plaintiff David M. Watson, II, originally brought this action *pro se* against the Delaware Psychiatric Center-Jane E. Mitchell Building ("DPC"), Delaware Department of Health and Human Services, Teresa Davis, and Milton Draper.  The Court dismissed Defendants DPC and Delaware Department of Health and Human Services on sovereign immunity grounds, and dismissed the official capacity claims against Defendants David and Draper as legally frivolous.[1]  After the appointment of counsel, Watson filed an amended complaint alleging Defendants Davis and Draper (collectively the "Defendants") in their individual capacities violated his First, Sixth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, his coextensive Sixth Amendment rights under the

---

[1] Watson's original claims raised under both the Federal and Delaware Rules of Evidence were dismissed as legally frivolous.

Constitution of the State of Delaware, and for conspiring to interfere with his civil rights under 42 U.S.C. § 1985.[2]  Before the Court is Defendants' Motion to Dismiss Watson's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In addition to arguing Watson fails to allege claims upon which relief can be granted, Defendants assert his claims are barred by abstention.  For the reasons that follow, Defendants' Motion to Dismiss Counts I-III is denied, but granted as to Count IV.

## I.      BACKGROUND

The amended complaint alleges the following:  In July 2020, Watson was transferred to DPC for a competency evaluation in connection with criminal proceedings initiated against him by the State of Delaware.[3]  (D.I. 15, § 10).  At the time of his transfer, Watson was a party in three separate judicial proceedings: a state criminal case in Maryland, a federal civil rights action in Delaware district court, and the state criminal case in Delaware.  (D.I. 15, § 2).  These proceedings required multiple meetings between Watson and his attorneys.  (D.I. 15, § 11).

Watson alleges that from July 2020 to October 2020, Defendants were present during one video court appearance, five video meetings, and one telephonic mediation with his attorneys, all of which were private and involved the exchange of sensitive and privileged information.  (D.I. 15, §§ 12–19).  On July 30, 2020, Watson alleges Defendant Draper was "present in the same room" during a video court appearance for his state

_____

[2] Watson also names five John Does as defendants.

[3] Delaware owns and operates DPC to house and treat individuals with mental health issues, including competency issues in judicial proceedings.  (D.I. 15, § 7).

criminal case in Maryland, even after he requested Defendant Draper to leave.  (D.I. 15, §

12).

Watson alleges that, less than a month later, a DPC employee told him that "DPC

policy and/or practice required the presence of a third party" after Watson announced that

"he didn't want anyone in the same room during any of his private visits with his attorney."

(D.I. 15, § 13).  During two private video meetings in August 2020 and one private video

meeting in early October 2020, Defendant Draper was present consistent with DPC policy

and/or practice while Watson exchanged "sensitive and privileged" information with his

attorneys.  (D.I. 15, §§ 14–16).  Watson had three more private video meetings and one

telephonic mediation in October 2020, during which he alleges Defendants were present.

(D.I. 15, §§ 17–19).  On or about November 18, 2020, a DPC employee delivered legal

correspondence to Watson that he claims had already been opened by an unnamed person.

(D.I. 15, § 20).

On November 30, 2020, Watson filed a grievance "concerning the violation of his

constitutional right to privacy in connection with the meetings between him and his

attorneys."  (D.I. 15, § 21).  During a review of his grievance with a DPC employee,

Watson claims he stated the filing of his grievance was a "procedural prerequisite to an

anticipated civil action arising out of the repeated violations of his constitutional rights."

(D.I. 15, § 22).

Watson avers Defendant Davis became aware of his intent to pursue a civil rights

action and thereafter DPC refused to respond to his grievance.  (D.I. 15, § 23). According

to DPC policy, grievances are to be answered within two weeks of receipt.  (D.I. 15, § 23)

(citing DEL. CODE ANN. tit. 16, § 5161(b)(15)(c)(West)).  Watson claims that Defendants'
failure to respond amounts to an effective denial and exhaustion of his administrative
remedies and that any further pursuit is futile.[4]  (D.I. 15, § 23).

On December 17, 2020, unnamed DPC correctional officers removed five books
from Watson's room because inmates were only allowed to possess three clinically
appropriate paperbook books pursuant to DPC policy.  (D.I. 15, § 24).  Later that day, DPC
employees allowed Watson to choose and have in his possession *The Prisoner's Guide to
Survival*, a soft cover book describing federal civil procedure, and a book on the Delaware
Rules of Evidence, along with a dictionary Watson already had in his possession.  (D.I. 15,
§§ 25–26).

Watson alleges that a day later on December 18, 2020, Defendant Davis "devised
an unwritten and unofficial policy" prohibiting inmates from possessing legal books after
becoming aware of the books Watson had chosen.  (D.I. 15, § 27).  As a result, the books
were removed from Watson's possession.  (D.I. 15, § 27).

---

[4] Watson did not attach his grievance or relevant grievance procedures to his amended
complaint but alleged he filed his grievance on November 30, 2020 and has received no
response from Defendants.  (D.I. 15, §§ 21, 23).  Since Defendants have not responded by
the time their Motion to Dismiss was filed on April 4, 2022, the Court reasonably infers
this fifteen months exceeds "the amount of time allowed for prison authorities to respond
under said grievance procedure."  *Woulard v. Food Serv.*, 294 F. Supp. 2d 596, 601 (D.
Del. 2003) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)).  The Court will
therefore not dismiss Watson's amended complaint for failure to exhaust administrative
remedies, as required by the Prison Litigation Reform Act, because his grievance was
"ignored by prison authorities under the grievance procedure."  *Id.* at 602; 42 U.S.C. §
1997e(a).

## II.     WATSON'S CLAIMS ARE NOT BARRED BY *YOUNGER* ABSTENTION

Defendants first argue Watson's claims are barred under the *Younger* abstention doctrine.  Because, if applicable, this doctrine would prevent the review of Watson's pleadings, the Court addresses this issue first.

*Younger* abstention arose primarily from "'the notion of comity,' that is, a proper respect for state functions." *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992) (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)).  *Younger* abstention is appropriate if: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims.  *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989).  The first prong is satisfied as there is an ongoing criminal proceeding initiated by the State of Delaware against Watson.  (D.I. 15, § 10).

However, in arguing that the second element—the implication of state interests—is met, Defendants overlook that Watson's claims would not "interfere with the ongoing [Delaware] proceedings" because he is seeking neither "an injunction against the state proceeding[] [itself] or [a] challenge [to] the law being applied in" it.  *Gwynedd*, 970 F.2d at 1200–01; (D.I. 15, § 42).  The Delaware court can still "carry[] out the important and necessary task of enforcing [its] laws" without a concern that this Court will interrupt their exercise of jurisdiction by issuing a stay.  *Younger*, 401 U.S. at 51–52.  Watson's federal

action before this Court does not, therefore, implicate *Younger* because it "parallel[s] but do[es] not interfere" with the Delaware proceeding.[5] *Gwynedd*, 970 F.2d at 1201.

## III.   STANDARD OF REVIEW

Finding that *Younger* does not prevent review, the Court will assess the Defendants' Motion to Dismiss.  When ruling on a motion to dismiss under Rule 12(b)(6), courts accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  *See id.* at 678. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: the well-pleaded facts must permit the court to infer that the pleader is entitled to relief.  *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal citation and quotation marks omitted).

---

[5] Since the second element was not satisfied, the Court will not consider whether the Delaware criminal proceedings afford Watson an adequate opportunity to raise his federal claims.  Nor will the Court address the exceptions to *Younger* abstention applicable in instances where all three elements are met.

## IV.   DISCUSSION

For the reasons that follow, Watson's amended complaint contains enough well-pleaded factual allegations to plausibly entitle him to relief for violations of his First and Sixth Amendment rights, as well as his coextensive Sixth Amendment right under the Delaware Constitution.  Watson does not however state a claim for conspiracy to interfere with his civil rights under 42 U.S.C. § 1985.

### a.  Watson states a claim under the Sixth Amendment

Watson alleges Defendants violated his Sixth Amendment right to confidential communication with his attorneys by denying him the ability to have any private meetings with his attorneys.  The Court's reading of the amended complaint leads the Court to conclude that Watson has set forth a plausible Sixth Amendment claim against Defendants.

Under the Sixth Amendment, "pretrial detainees have a constitutionally protected right to the effective assistance of counsel" in their criminal defense.  *Cobb v. Aytch*, 643 F.2d 946, 957 (3d Cir. 1981).  Although the Third Circuit has not held in a precedential opinion that this includes a pretrial detainee's right to confidential communication with their attorney, courts "within this Circuit have recognized" it.[6]  *Talley v. Varner*, No. 3:17-cv-965, 2018 WL 7890011, at *5 (M.D. Pa. Dec. 10, 2018) (citing *Williams v. Price*, 25 F. Supp. 2d 623 (W.D. Pa. 1998)); *Strode v. Park*, No. 1:21-cv-00291, 2021 WL 6072700, at *7 (M.D. Pa. Dec. 23, 2021).

---

[6] *Williams* itself did not recognize a prisoner's Sixth Amendment right to private communication but both *Strode* and *Talley* construe *Williams* to conclude such a right exists.  *See* 2021 WL 6072700, at *7; 2018 WL 7890011, at *5.

Watson alleges Defendants were present during one video court appearance, five video meetings, and one telephonic mediation with his attorneys, all of which were private and involved the exchange of sensitive and privileged information.[7]  (D.I. 15, §§ 11, 14–19).  Despite Watson's request for Defendant Draper to leave during the first of these meetings, Defendants continued to be present pursuant to DPC's "policy and/or practice requir[ing] the presence of a third party."  (D.I. 15, § 13).  From these pleadings, the Court can reasonably infer Defendants' presence during these meetings "rendered [Watson's] communications with his counsel non-confidential." *Talley*, 2018 WL 7890011, at *5.

This conduct plausibly amounted to unlawful interference in Watson's right to confidential communication with his attorneys, *Strode*, 2021 WL 6072700, at *7–8 (finding plausible Sixth Amendment claim because of Defendant's "remaining in the room" during phone call between pretrial detainee and attorney), and discovery will allow Watson to demonstrate "the conditions under which" he met "with [his] attorneys." *Telepo v. Martin*, No. 3:08-cv-2132, 2009 WL 2476498, at *7 (M.D. Pa. Aug. 12, 2009).  Because Watson has pleaded "sufficient factual matter" to proceed, *Iqbal*, 556 U.S. at 678, the Court will deny Defendants' Motion to Dismiss Count I.[8]

---

[7] The Court recognizes the Sixth Amendment only "attache[d]" for Watson's meetings which involved a criminal defense.  *Cobb*, 643 F.2d at 957.  Although the amended complaint is not clear which of the seven meetings related to his criminal defenses, the Court construes the allegations to contain five meetings in connection with the Maryland and Delaware state criminal charges brought against Watson.

[8] For these reasons, Defendants' Motion to Dismiss Count II's alleged violation of Watson's coextensive Sixth Amendment right under the Delaware Constitution is also denied.  Since Watson states a Sixth Amendment claim on this basis, it is not necessary for the Court to consider the one-time opening of Watson's legal mail outside his presence.

**b.  Watson states a claim under the First Amendment**

Watson next alleges Defendants violated his First Amendment right to access books for no legitimate penological purpose and in retaliation for his impending civil action against them.  The Court finds Watson has pleaded a plausible First Amendment retaliation claim for his right to access the courts.

To demonstrate retaliation, Watson must show: (1) he engaged in constitutionally-protected activity; (2) the government responded with retaliation; and (3) the protected activity caused the retaliation.[9]  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Here, Watson exercised his constitutional right of access to the courts, which barred Defendants "from actively interfering with [his] attempts to prepare legal documents . . . or file" his civil rights action.  *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (citing *Johnson v. Avery*, 393 U.S. 483, 484, 489–490 (1969), and *Ex parte Hull*, 312 U.S. 546, 547–49 (1941)).

In preparing his filing, and pursuant to DPC's book policy as it existed on December 17, 2020, Watson chose to have in his possession *The Prisoner's Guide to Survival,* a book describing federal civil procedure, and the Delaware Rules of Evidence, along with a dictionary.  (D.I. 15, §§ 24–26).  Assuming the veracity of Watson's allegations, *see Iqbal*, 556 U.S. at 679, Defendant Davis, who was already aware of Watson's intent to pursue a civil rights action, became aware of the legal books Watson had chosen and "devised an

---

[9] Defendants argue Watson fails to state a claim because he does not allege he suffered an injury, (D.I. 25, at § 13), but "[r]etaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."  *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990).

unwritten and unofficial policy that inmates would no longer be allowed to possess legal books." (D.I. 15, §§ 23, 27). As a result, the "law books [that] . . . were still necessary to ensure [Watson's] meaningful access to the courts," *See Rivera v. Monko*, 37 F.4th 909, 920 (3d Cir. 2022), were removed from Watson's possession only one day later. (D.I. 15, § 27). Following discovery, "prison officials may still demonstrate that their actions were reasonably related to legitimate penological interests," *Wisniewski v. Fisher*, 857 F.3d 152, 157 n.2 (3d Cir. 2017), or that Watson had alternative access to legal materials. But the Court "cannot say, at this stage, that [Watson's] allegations [are] insufficient to survive a Rule 12(b)(6) dismissal." *See id.*

### C.    Watson does not state a claim under 42 U.S.C. § 1985

Lastly, Watson has brought a conspiracy claim against Defendants pursuant to 42 U.S.C. § 1985(2). In order to state a claim, Watson must allege Defendants conspired either (1) to intimidate a party, witness, juror, or to obstruct justice in connection with a federal proceeding; or (2) to deprive him of constitutional rights. 42 U.S.C. § 1985(2). Watson does not state upon which of these two categories of Section 1985(2) he bases his claim, but an analysis under either category demonstrates that Watson's claim must fail.

As a threshold matter, Watson only broadly alleges a conspiracy. There are no specific allegations from which the Court could infer Defendants "had an understanding or agreement to conspire against" him. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). "To constitute a conspiracy, there must be a 'meeting of the minds.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). This deficiency alone is "fatal" to Watson's claim. *See Rumanek v. Fallon*, No. 1:17-CV-123, 2018 WL

4441458, at *15 (D. Del. Sept. 17, 2018) (dismissing Section 1985(2) claim because "pleading contain[ed] a dearth of allegations substantiating any agreement among the alleged coconspirators.").   Watson argues discovery will allow him to prove there was an understanding between Defendants, (D.I. § 30, at 15), but his pleadings are devoid of "enough facts to raise a reasonable expectation that discovery will reveal [this] evidence . . . ." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).   The bare conclusion that Defendants "act[ed] in concert to deprive Mr. Watson of his constitutional rights," (D.I. 15, § 42), "does not unlock the doors of discovery . . . ." *Iqbal*, 556 U.S. at 678.

More specifically, the first category of Section 1985(2) provides relief for the "intimidation of or retaliation against parties or witnesses, or grand or petit jurors" in "connection . . . to a federal court." *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976). Watson has not pleaded any such conduct.   As for the second category, Watson does not allege Defendants "colluded with the requisite 'racial, or . . . otherwise class-based, invidiously discriminatory animus.'" *Davis v. Twp. of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999) (citing *Kush v. Rutledge*, 460 U.S. 719, 725 (1983) (construing Section 1985(2) to require an allegation of racial or class-based invidiously discriminatory animus)).   As outlined above, Defendants' Motion to Dismiss Count IV is granted.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Counts I-III is DENIED, but is GRANTED as to Count IV.